1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF TEXAS
2              HOUSTON DIVISION

3   UNITED STATES OF AMERICA      .  CR. NO. H-09-259
                                  .  HOUSTON, TEXAS
4   VS.                           .
                                  .  SEPTEMBER 25, 2009
5   ARNOLDO MALDONADO             .  11:20 A.M. to 11:45 A.M.

6

7              TRANSCRIPT of REARRAIGNMENT
        BEFORE THE HONORABLE EWING WERLEIN, JR.
8              UNITED STATES DISTRICT JUDGE

9

10  APPEARANCES:

11

12  FOR THE GOVERNMENT:           MR. JIM McALISTER
                                  Assistant U.S. Attorney
                                  919 Milam
13                                Houston, Texas   77002

14

15  FOR THE DEFENDANT:            MS. FELA OLIVAREZ
                                  Attorney at Law
16                                216 E. Expressway 83
                                  Suite L & M
17                                Pharr, Texas    78577

18

19  OFFICIAL COURT REPORTER:      MS. KATHY L. METZGER
                                  U.S. Courthouse
20                                515 Rusk
                                  Room 8016
21                                Houston, Texas   77002
                                  713-250-5208

22

23

24

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.

PROCEEDINGS

THE COURT:  No. 09-467 -- beg your pardon, 09-259.
This is United States versus Arnoldo Maldonado.

MR. McALISTER:  Jim McAlister for the government, Your
Honor.

MS. OLIVAREZ:  Fela Olivarez, Your Honor, for
Defendant Arnoldo Maldonado.

THE COURT:  Thank you.

It's my understanding that the defendant wishes
to enter a plea of guilty on a superseding information?

MR. McALISTER:  Yes, Your Honor.  It's actually a
second superseding information.

THE COURT:  Second superseding information.  All
right.  I'll ask that he be sworn.

THE CASE MANAGER:  Raise your right hand.

(Arnoldo Maldonado, Defendant, Sworn)

THE COURT:  You understand now that you're under oath
and if you answer any of my questions falsely, your answers may
later be used against you in another prosecution for perjury or
for making a false statement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The purpose of this hearing is to
determine two things.  First, I need to determine if you're
mentally competent to participate in this hearing and
understand what is happening here today.  Second, I need to

determine whether there is an independent basis in fact to
support your plea of guilty to the offense charged against you
in Count 1 of the information -- of the second criminal
information.  It's very important, therefore, that you
understand my questions to you and anything that either of the
lawyers may say.  If at any time you do not understand what is
being said to you, will you ask that it be repeated or
rephrased in such a way that you clearly understand before
giving your response to me?

   *THE DEFENDANT:*  Yes, sir.

   *THE COURT:*  Where is this criminal information?

   *MR. McALISTER:*  I have a copy, Your Honor.

   *THE COURT:*  Well, is this a -- this says
"information," not a second information; is that correct?

   *MR. McALISTER:*  No, Your Honor, there should be an SS
number up at the top.

   *THE COURT:*  Well, it is an SS number.  It's just
not --

   *MR. McALISTER:*  Oh, yes, then it is correct, Your
Honor.

   *THE COURT:*  It's not entitled a second --

   *MR. McALISTER:*  Yes, Your Honor.

   *THE COURT:*  -- criminal information.  It just calls it
information.  It would be helpful if you also entitled it
"Second Criminal Information."

1        *MR. McALISTER:* Yes, Your Honor.

2        *THE COURT:* All right. Thank you.

3        All right. What is your full name?

4        *THE DEFENDANT:* Arnoldo Maldonado.

5        *THE COURT:* How old are you?

6        *THE DEFENDANT:* 45.

7        *THE COURT:* How far did you go in school?

8        *THE DEFENDANT:* Sophomore in college.

9        *THE COURT:* Where was that?

10       *THE DEFENDANT:* Edinburg, Texas. Pan American

11 University, I'm sorry.

12       *THE COURT:* And have you ever been hospitalized or

13 treated by a doctor for any type of mental or psychiatric

14 problem?

15       *THE DEFENDANT:* No, sir.

16       *THE COURT:* Has any doctor ever suggested that you

17 need to receive that type of treatment?

18       *THE DEFENDANT:* No, sir.

19       *THE COURT:* Have you ever been treated for addiction

20 to drugs or to alcohol?

21       *THE DEFENDANT:* Yes, sir.

22       *THE COURT:* When was that?

23       *THE DEFENDANT:* That was back in 1996.

24       *THE COURT:* And where was that treatment?

25       *THE DEFENDANT:* San Antonio.

1    THE COURT:  And was it inpatient or outpatient?

2    THE DEFENDANT:  Inpatient.

3    THE COURT:  And how long did it last, the treatment?

4    THE DEFENDANT:  Three weeks.

5    THE COURT:  And then you were discharged?

6    THE DEFENDANT:  Correct.

7    THE COURT:  Was the treatment successful?

8    THE DEFENDANT:  First time it wasn't.  The second time
9  it was.

10   THE COURT:  Then you went in for treatment again?

11   THE DEFENDANT:  Yes, sir.

12   THE COURT:  When was that?

13   THE DEFENDANT:  About a year afterwards.

14   THE COURT:  Same place?

15   THE DEFENDANT:  Same place.

16   THE COURT:  And how long were you then treated?

17   THE DEFENDANT:  Also three weeks.

18   THE COURT:  And what year was that?

19   THE DEFENDANT:  A year after, about '97.

20   THE COURT:  And have you stayed dried since?

21   THE DEFENDANT:  Uh-huh.  Yes, sir.  I'm sorry.

22   THE COURT:  Have you taken any kind of medication,
23  pills -- have you been told that you need to receive any other
24  kind of treatment for any of these addictions?

25   THE DEFENDANT:  No, sir.

1    *THE COURT:*  Have you taken any kind of medication,
2  pills or narcotic drugs of any type within the last 48 hours?

3    *THE DEFENDANT:*  No, sir.

4    *THE COURT:*  Have you consumed any alcoholic beverage
5  within the last 24 hours?

6    *THE DEFENDANT:*  No, sir.

7    *THE COURT:*  Are you well-rested and of clear mind this
8  morning?

9    *THE DEFENDANT:*  Yes, Your Honor.

10   *THE COURT:*  Is there any reason that you can think of
11  why you would not be able to understand what is happening here
12  today?

13   *THE DEFENDANT:*  No, Your Honor.

14   *THE COURT:*  Have you been able to confer with your
15  lawyer again this morning before this hearing began?

16   *THE DEFENDANT:*  Yes, Your Honor.

17   *THE COURT:*  Have you received a copy of this second
18  criminal information?

19   *THE DEFENDANT:*  Yes, Your Honor.

20   *THE COURT:*  And have you read it?

21   *THE DEFENDANT:*  Yes, Your Honor.

22   *THE COURT:*  Have you been over it with your lawyer?

23   *THE DEFENDANT:*  Yes, Your Honor.

24   *THE COURT:*  Have you talked about the case in general
25  with your lawyer?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  About how many times have you talked with

3    your lawyer about this case?

4            THE DEFENDANT:  Several times.

5            THE COURT:  How many?

6            THE DEFENDANT:  Several.

7            THE COURT:  Several.  Are you fully satisfied with the

8    counsel and representation and advice given to you by your

9    lawyer?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Now, there's a waiver of an indictment in

12   the file here signed by you before Judge John Froeschner, was

13   it?

14           THE DEFENDANT:  Correct.

15           THE COURT:  On September 24?

16           THE DEFENDANT:  Correct, Your Honor.

17           THE COURT:  And he explained to you at that time your

18   right to have this charge referred to a grand jury?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  You understand that a grand jury is

21   composed of at least 16 and not more than 23 people and that 12

22   of them would all have to unanimously agree, at least 12, in

23   order for you to have an indictment returned against you?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Do you understand that the grand jury,

therefore, if it heard the evidence may or may not indict you?

        *THE DEFENDANT:*  Yes, Your Honor.

        *THE COURT:*  That you have the right to have this referred to a grand jury for consideration, you understand?

        *THE DEFENDANT:*  Yes, Your Honor.

        *THE COURT:*  And you're choosing -- you chose to waive that right?

        *THE DEFENDANT:*  Correct, Your Honor.

        *THE COURT:*  And is that still your decision today?

        *THE DEFENDANT:*  Yes, Your Honor.

        *THE COURT:*  And you've talked with your lawyer about that?

        *THE DEFENDANT:*  Yes, Your Honor.

        *THE COURT:*  All right.  Now, I've been told, then, that you intend to plead guilty on this criminal information and I want to ask whether anyone has made any kind of promise to you or assurance of any kind in order to persuade you or induce you to plead guilty in this case?

        *THE DEFENDANT:*  No, Your Honor.

        *THE COURT:*  Has the government or anybody else coerced you or threatened you or in any way attempted to force you to plead guilty in this case?

        *THE DEFENDANT:*  No, Your Honor.

        *THE COURT:*  Do you understand that the offense to which you're proposing to plead guilty is a felony offense?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Excuse me just a moment.

3           And, therefore, because it is a felony offense,

4   if your plea is accepted, you will be adjudged guilty of that

5   offense and that such adjudication may deprive you of valuable

6   civil rights, such as the right to vote, the right to hold

7   public office, the right to serve on a jury, the right to

8   possess any kind of firearms, and if you're not a citizen of

9   the United States could adversely affect your immigration

10  status in the United States.  Do you understand that those are

11  all probable consequences of pleading guilty?

12     THE DEFENDANT:  Yes, Your Honor.

13     THE COURT:  Have you talked with your lawyer about

14  what the maximum penalty is for the offense charged against you

15  in this second criminal information?

16     THE DEFENDANT:  Yes, Your Honor.

17     THE COURT:  Let me go over that with you.  In this

18  matter you're charged with conspiracy to receive and sell

19  stolen goods in violation of federal law.  Before a jury --

20  this offense carries with it an offense of not -- rather, a

21  term in prison of not more than five years in prison; a fine

22  not to exceed $250,000; a term of not more than three years of

23  supervised release; and a special assessment of $100.  Has all

24  of that been explained to you?

25     THE DEFENDANT:  Correct, Your Honor.

1    *THE COURT:*  And when I talk about supervised release,

2    I'm talking about the condition of supervision that exists when

3    one leaves prison there are certain conditions imposed, such as

4    not committing another federal, state, or local crime; not

5    possessing any kind of illegal controlled substance; and other

6    conditions.  And if any of those conditions is broken, then a

7    judge upon hearing may set aside your release and order you

8    back to prison for up to two more years in prison just for

9    having broken a term of supervised release.  Do you understand?

10   *THE DEFENDANT:*  I understand, Your Honor.

11   *THE COURT:*  So you see then what the possible

12   consequences may be of your plea of guilty to this particular

13   crime in terms of what the maximum possible sentence could be?

14   *THE DEFENDANT:*  Correct.

15   *THE COURT:*  You also understand that in the federal

16   system there's no parole?  So, in other words, if you are

17   sentenced to a time in prison, you have to serve that time and

18   cannot get out early on parole.  Do you understand?

19   *THE DEFENDANT:*  I understand, Your Honor.

20   *THE COURT:*  Have you talked with your lawyer about how

21   the U.S. Sentencing Commission Guidelines may apply to the

22   sentencing in your case?

23   *THE DEFENDANT:*  Yes, Your Honor.

24   *THE COURT:*  Do you understand that the guidelines are

25   important in terms of a beginning point in the assessment of a

just sentence, but that they are advisory, they're not
mandatory, and therefore the Court may impose a sentence that
is more severe or that is less severe than what is called for
by the guidelines?  Do you understand?

        *THE DEFENDANT:*  I understand, Your Honor.

        *THE COURT:*  And, also, under some circumstances you or
the government would have the right to appeal to a higher court
any sentence that I impose.

        *THE DEFENDANT:*  I understand, Your Honor.

        *THE COURT:*  Do you also understand that if the
government makes a recommendation for leniency and I don't
follow their advice, as I sometimes do not do, that you still
have to stand by your plea of guilty and would not be able to
withdraw it?

        *THE DEFENDANT:*  I understand, Your Honor.

        *THE COURT:*  All right.  And you have a right to plead
not guilty and if you plead not guilty and persist in that
plea, then you would have a right to a trial by jury, during
which you would also have the right to the assistance of
counsel for your defense, the right to see and hear all of the
witnesses and have them cross-examined in your defense, the
right on your own part to decline to testify unless you
voluntarily elected to do so in your own defense, and the right
to the issuance of subpoenas or compulsory process to compel
the attendance of witnesses to come to court and testify in

1  your defense.  Do you understand that under our system you

2  would have all of those rights if you pled not guilty?

3         *THE DEFENDANT:*  I understand that.

4         *THE COURT:*  But by entering a plea of guilty, if I

5  accept your plea, then there will be no trial and you will have

6  waived and given up your right to a trial as well as all of

7  those other rights associated with a trial that I just

8  described to you.  Do you understand?

9         *THE DEFENDANT:*  I understand, Your Honor.

10        *THE COURT:*  Let me explain to you now the essential

11  elements of the offense for which you've been charged.  You've

12  been charged with conspiracy to receive and sell stolen goods,

13  in violation of federal law.  First, let me explain to you what

14  the elements are of that crime that you have been charged --

15  where it's charged that you have conspired to have that crime

16  committed.

17              The underlying crime is for the receipt and sale

18  of stolen goods.  In order for one to be convicted of that

19  offense, it would need -- the government would need to prove

20  that, one, the property was stolen or unlawfully converted;

21  Two, such property had crossed a state or United States

22  boundary after being stolen or unlawfully converted; three,

23  that the defendant charged received or concealed, sold or

24  deposed of items of the stolen property; four, that the

25  defendant knew the property was stolen or unlawfully converted

1  at the time that defendant received it or concealed it or sold

2  it or deposed of it; and, five, that those items had a value of

3  $5,000 or more.

4  Now, you're charged with conspiracy to commit

5  that crime, to receive and sell stolen goods.  Before a jury

6  could convict you of this crime charged against you in Count

7  2 -- rather, in Count 1 of the second superseding information,

8  the government would have to prove beyond a reasonable doubt:

9  One, that you and at -- that two or more persons made an

10  agreement to commit that crime I described to you of receiving,

11  possessing, or selling stolen goods as charged in the

12  information; two, that you knew of that agreement and of its

13  unlawful purpose and joined in it willfully, that is, with the

14  intent to further its unlawful purpose; and, three, that one of

15  the conspirators during -- at least one of the conspirators

16  during the existence of the conspiracy committed at least one

17  of the overt acts described in the information in order to

18  accomplish some object or purpose of the conspiracy.

19  Do you understand that those are the elements of

20  the offense charged against you in Count 1 of the second

21  superseding information?

22  *THE DEFENDANT:*  Yes, I understand, Your Honor.

23  *THE COURT:*  All right.  Then I'm going ask the

24  government to state what facts it's prepared to prove if you

25  choose to plead not guilty.  I want you to listen to what the

1  government counsel has to say and then while you're still under

2  oath, I'm going ask you about these things.

3          Mr. McAlister.

4      MR. McALISTER:  Thank you, Your Honor.

5          In 2007 the government of Mexico provided U.S.

6  Immigration and Customs Enforcement with information regarding

7  numerous companies and individuals that were involved in the

8  smuggling of stolen petroleum products, such as natural gas

9  condensate from Mexico into the United States.

10          An ICE investigation into the claim by Mexico

11  revealed -- and excuse me for my pronunciations, Your Honor --

12  Petroleos Mexicanos, which is PEMEX, the national Mexican oil

13  company, Mexico and PEMEX stated that they were the only legal

14  owners and exporters of condensate into the United States from

15  Mexico.

16          The further investigation by ICE revealed that

17  Mr. Arnoldo Maldonado, the defendant here today, was working

18  with a Mexican company under the name Ygriega --

19      THE DEFENDANT:  Yeah.

20      MR. McALISTER:  -- Energy or Y Oil and Gas is how I

21  say it.  Ygriega Energy Company.  And that's Y-g-r-i-e-g-a.

22          The investigation determined that the various

23  U.S. companies and Mexican companies were working together.

24  They conspired to import Mexican condensate stolen from PEMEX

25  into the United States.  The sold condensate was sold to larger

1  companies within the United States.

2          Mr. Maldonado coordinated the delivery of stolen

3  Mexican condensate by semi-tanker trucks.  The condensate was

4  brought into the United States from Mexico via a land border

5  port of entry.  Mr. Maldonado through Y Oil and Gas coordinated

6  the delivery by tanker trucks to a company in the U.S. called

7  Continental Fuels.  It's located inside the Port of

8  Brownsville, Texas.

9          Under the arrangement Continental Fuels -- this

10  is in '09 specifically, Your Honor.  Continental Fuels paid Y

11  Oil and Gas and other companies by wire transfer to bank

12  accounts for the stolen Mexican condensate.  Continental Fuels

13  then stored the product until there was a sufficient quantity

14  of condensate to load on a barge and deliver to an end user.

15          Examples of the imports are as follows:  On

16  January 26th of 2009 the defendant and others arranged for ten

17  tanker trucks of stolen condensate to be delivered to

18  Continental Fuels.

19          On February 27th of 2009 the defendant and others

20  arranged for six tanker trucks of stolen condensate to be

21  delivered to Continental Fuels.

22          And on March 3rd of 2009 the defendant and others

23  arranged for six tanker trucks of stolen condensate to be

24  delivered to Continental Fuels.

25          The information was verified through the business

1  records of Continental Fuels.

2          Mr. Maldonado and others were responsible for the

3  sale and barging of the following amounts:

4          In January of 2009 -- and, Your Honor, the barrel

5  and the values fluctuate a little bit according to the price of

6  the condensate.  But about $244,507 was taken in January of

7  2009; 544,816 in February of 2009; and 205,696 in March of

8  2009.  About 668,000 of the total figures I just read to the

9  Court was ultimately sent to Mexico.  So, Mr. Maldonado's

10  portion would have been the difference between that.

11          The United States can show that Mr. Maldonado had

12  knowledge that the condensate transactions described, as I just

13  mentioned, involved stolen condensate from Mexico through a

14  series of recorded conversations which took place in 2008 and

15  2009.  In these conversations arrangements for the sale of

16  transport of the condensate were discussed.  As an example, in

17  January 6th of 2009, the defendant participated in a telephone

18  conversation with an employee of Continental Fuels in which

19  they discussed the problems involved in the import of stolen

20  condensate through customs and the problems with payoffs that

21  would be required.

22      *THE COURT:*  All right.  You heard what Mr. McAlister

23  has said.  Are these facts true?

24      *THE DEFENDANT:*  Correct, Your Honor.

25      *THE COURT:*  Tell me about your own role in this.

1          *THE DEFENDANT:*  My role in this?

2          *THE COURT:*  Yes.

3          *THE DEFENDANT:*  That I would just -- they would report

4    to me how many semi-tankers were going to cross that morning,

5    and I would report it to Continental Fuels, how many tankers

6    were going to cross this morning.

7          *THE COURT:*  Where were you living?

8          *THE DEFENDANT:*  I live in Edinburg, Texas, sir.

9          *THE COURT:*  And your company is which company?

10         *THE DEFENDANT:*  Ygriega Energy Company, Y Gas and Oil.

11         *THE COURT:*  And, so, how were they stealing the

12   condensate from PEMEX?

13         *THE DEFENDANT:*  I have no idea on that, sir.

14         *THE COURT:*  You just knew it was stolen on those

15   trucks when they were coming in, the tanker trucks coming in?

16         *THE DEFENDANT:*  I did not make any kind of

17   arrangements to cross trucks over or get the paperwork on that.

18   They were in charge of taking care of all of that.

19         *THE COURT:*  But how would you get the information on

20   what number of trucks were coming?

21         *THE DEFENDANT:*  Somebody would call me in the morning

22   and let me know how many trucks were ready to cross.

23         *THE COURT:*  All right.  And, so, you knew those were

24   the trucks with the stolen condensate?

25         *THE DEFENDANT:*  Yeah.  Yeah, I guess.

1        THE COURT:  And then what would you do with that

2   information?

3        THE DEFENDANT:  I would call Continental Fuels and let

4   them know how many trucks were on their way over there.

5        THE COURT:  All right.  Now, in this telephone

6   conversation on January 6th about the problems involved in

7   importing stolen condensate, what are some of the problems that

8   you were talking about?

9        THE DEFENDANT:  The problems was like somebody in the

10  bridge was not cooperating with the people in Mexico.

11       THE COURT:  And, so, what would be done to those?

12       THE DEFENDANT:  That was in their hands.  I mean,

13  sometimes they would request not to go.

14       THE COURT:  And why did they need that cooperation of

15  somebody on the bridge?

16       THE DEFENDANT:  I guess -- I guess to process papers.

17  I'm guessing.  I wasn't involved in that side of it, Your

18  Honor, on the transaction.

19       THE COURT:  And this condensate was right up into the

20  hundreds of thousands of dollars of fuel then?

21       THE DEFENDANT:  I imagine, yes, sir.

22       THE COURT:  Well, you're in the business, aren't you?

23       THE DEFENDANT:  Yes, sir.  I'm not into the refining

24  product business.  I'm more in the motor oil business than the

25  oil refine business.

1      *THE COURT:*  What business?

2      *THE DEFENDANT:*  On the motor oil business.  Motor oil.

3      *THE COURT:*  Motor oil?

4      *THE DEFENDANT:*  Yeah.  Yes, Your Honor.

5      *THE COURT:*  All right.  Well, condensate is pretty

6   valuable, isn't it?

7      *THE DEFENDANT:*  Yes.  Yes, sir.

8      *THE COURT:*  You suppose that many trucks would have

9   hundreds of thousands of dollars of condensate on them,

10  wouldn't you?

11     *THE DEFENDANT:*  Yes, sir.

12     *THE COURT:*  Is there any other advice I need to give

13  to the defendant under Rule 11, Ms. Olivarez?

14     *MS. OLIVAREZ:*  No, Your Honor.

15     *THE COURT:*  Do you know of any reason why the

16  defendant would not be competent to enter a knowing and

17  voluntary plea or any reason he should not enter a plea of

18  guilty?

19     *MS. OLIVAREZ:*  I do not, Your Honor.

20     *THE COURT:*  All right.  Then, Mr. Arnoldo Maldonado,

21  how do you plead to the charge set forth against you in Count 1

22  of the second criminal information, guilty or not guilty?

23     *THE DEFENDANT:*  Guilty, Your Honor.

24     *THE COURT:*  It is the finding of the Court in the case

25  of United States of America versus Arnoldo Maldonado that the

defendant is fully competent and capable of entering an
informed plea and that his plea of guilty is a knowing and
voluntary plea supported by an independent basis in fact
containing each of the essential elements of the charged
offense.  The defendant's plea of guilty is therefore accepted,
and Defendant Maldonado is now adjudged guilty of the offense
charged against him in Count 1 of the second criminal
information.

A written presentence report will now be prepared
for me to assist me in the sentencing process.  You will be
asked to give information for the report and your lawyer may be
present with you if you wish for her to be so.  It's very
important that you furnish full and accurate information.  A
failure to do so can be used as a basis to increase the
guidelines range.  You and your lawyer will also be permitted
to read the presentence report from the probation officer
before the sentencing hearing, and you and your lawyer will
also have an opportunity to speak in your behalf at the
sentencing hearing.

The initial report is due November 9.
Objections, if any, or a statement that there are none will be
filed by November 23rd.  The final report is due December 7.
And sentencing is set for January 8, 2010, at 10:30 a.m.

The defendant has been on terms of release
heretofore?

          MR. McALISTER:  Yes, Your Honor.  He surrendered
yesterday.  He's known about the charges since March.  We would
ask that he be allowed to remain on bond under the same
conditions.

          THE COURT:  All right.  Do you remember what the
magistrate judge advised about your bond, the conditions?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  And I'm going to -- the government has
agreed and it has been requested I'm sure by the defendant, I'm
going to permit you to continue -- you'll be on bond.  You will
be required to comply with all of those conditions and make all
appearances, including the sentencing hearing.  Do you
understand?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  Is there anything further today?

          MR. McALISTER:  Nothing further, Your Honor.

          THE COURT:  All right.  Thank you.  That concludes
this hearing then.

          MS. OLIVAREZ:  Thank you.

          MR. McALISTER:  Thank you.

          THE COURT:  The court will be in recess.

     (Concluded at 11:45 a.m.)

                         *  *  *

I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled cause, to the best

1  of my ability.

2

3  /s/ *Kathy L. Metzger*                    *10-19-09*
   Kathy L. Metzger                        Date
4  Official Court Reporter

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25