```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3   UNITED STATES OF AMERICA       .  CR. NO. H-09-259
                                    .  HOUSTON, TEXAS
 4   VS.                            .
                                    .  NOVEMBER 5, 2010
 5   ARNOLDO MALDONADO              .  10:00 A.M. to 10:35 A.M.

 6

 7                     TRANSCRIPT of SENTENCING
                BEFORE THE HONORABLE EWING WERLEIN, JR.
 8                   UNITED STATES DISTRICT JUDGE

 9

10   APPEARANCES:

11
     FOR THE GOVERNMENT:            MR. JAMES D. McALISTER
12                                  Assistant U.S. Attorney
                                    P.O. Box 61129
13                                  Houston, Texas  77208

14

15   FOR THE DEFENDANT:             MS. FELA OLIVAREZ
                                    Attorney at Law
16                                  216 E Expressway 83
                                    Suite L & M
17                                  Pharr, Texas  78577

18

19   OFFICIAL COURT REPORTER:       MS. KATHY L. METZGER
                                    U.S. Courthouse
20                                  515 Rusk
                                    Room 8004
21                                  Houston, Texas  77002
                                    713-250-5208
22

23

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

```
 1                      P R O C E E D I N G S
 2          THE COURT:  Please be seated.
 3              The Court for calls for sentencing No. 09-259,
 4  United States versus Arnoldo Maldonado.  For the United States?
 5          MR. McALISTER:  Jim McAlister for the United States,
 6  Your Honor.
 7          MS. OLIVAREZ:  Fela Olivarez for the defendant,
 8  Arnoldo Maldonado.
 9          THE COURT:  Thank you.  It's correct, is it not,
10  that -- we're picking up all your conversations back there.
11  Thank you.
12              It's correct, is it not, that the defendant was
13  adjudged guilty of Count 1 of the second superseding indictment
14  pursuant to a plea of guilty?
15          MS. OLIVAREZ:  Yes, Your Honor.
16          THE COURT:  And that was in connection with a plea
17  agreement?
18          MS. OLIVAREZ:  Yes, Your Honor.
19          THE COURT:  No, without a written plea agreement; is
20  that correct?
21          MS. OLIVAREZ:  We had a plea agreement, Judge.
22          THE COURT:  Well, it shows in Paragraph 4 without a
23  written plea agreement.  There's a second superseding
24  information without a written plea agreement, it states at
25  Paragraph 4 of the PSR, is that correct, or what?
```

1                *MR. McALISTER:*  I think that's correct.
2                *MS. OLIVAREZ:*  That's correct.  Yes, Your Honor, you
3     are correct.
4                *THE COURT:*  That is correct.  All right.  Thank you.
5                *MR. McALISTER:*  Your Honor, I think where the
6     confusion may result slightly is because of the time.  I had
7     put on the record pursuant to the agreement between myself and
8     counsel about the relevant conduct issue, which was an
9     agreement.  We didn't file a written plea agreement with the
10    Court.
11               *THE COURT:*  All right.  Now, have you received,
12    Ms. Olivarez, the presentence investigation report from the
13    probation office and has your client had opportunity to read it
14    and discuss it with you?
15               *MS. OLIVAREZ:*  Yes, Your Honor, we have.
16               *THE COURT:*  All right.  I have received and read in
17    connection with this sentencing the presentence investigation
18    report from the probation office; the statement of the
19    government that it has no objections at Document No. 145; the
20    Government's Section 5K1.1 motion at Docket No. 180; the
21    objections of the defendant at Document No. 167; the affidavit
22    of the defendant at Document No. 168 accepting responsibility;
23    the notice to the Court with letters from family and supporters
24    at Document No. 179, those letters being written on behalf of
25    the defendant; also, the addendum to the presentence report

1  from the probation office dated November 1, 2010.
2              Are these all of the matters that have been filed
3  in connection with this sentencing?
4              *MR. McALISTER:*  Yes, by the government, Your Honor.
5              *MS. OLIVAREZ:*  Your Honor, did you also read the
6  objections?  I didn't hear the objections, my objections?
7              *THE COURT:*  The objections at Document No. 167.
8              *MS. OLIVAREZ:*  Okay.  Yes.  Thank you.
9              *THE COURT:*  All right.  I'll rule on the objections
10 then.  The government has none.
11             The first -- defendant's first objection is to
12 Paragraph 24, objecting to an Offense Level 20, stating that
13 the defendant is not in the business of receiving and selling
14 stolen property within the meaning of the guidelines, but had a
15 legitimate business as well.  The cases cited by the -- in the
16 addendum by the probation officer are dispositive of that.
17 This is a guideline section contemplated to sanction those who
18 are acting as fences, such as this defendant was doing in this
19 particular case, trying to take stolen product and make it look
20 legitimate, and the adjustment is proper.  The objection is
21 denied.
22             The second objection is to Paragraph 27,
23 objecting that the defendant should have a minimal role
24 adjustment of minus four or alternatively minus three levels.
25 That is denied.  The defendant is not being held accountable

```
 1  for all of the stolen product in the entire operation from
 2  Mexico but a much more limited volume.  He was certainly at
 3  least an ordinary participant, and that objection is therefore
 4  denied.
 5              The third objection is to Paragraph 30, objecting
 6  that the defendant should have minus three levels for
 7  acceptance of responsibility.  It's sustained with respect to
 8  two levels given his affidavit accepting responsibility.  Under
 9  Section 3E.1 -- E1.1(b) in order to get a third level, there
10  needs to be a motion from the government stating the defendant
11  has assisted authorities in the investigation or prosecution
12  of his own conduct.  I've not -- I haven't seen a 3E1.1(b)
13  motion filed by the government.
14         *MR. McALISTER:*  Your Honor, I would make an oral
15  motion for that.  And I put in my 5K motion that the government
16  assumes the defendant would get a three point departure.
17         *THE COURT:*  All right.  Well, I'll grant that three
18  levels.  Sustained on the objection made by the defendant.
19              The fourth objection and the fifth objection to
20  Paragraphs 33 and 72 respectively I believe are both
21  computation objections based upon the previous objections, and
22  they are granted in part, otherwise, denied for the reasons
23  previously stated.  And, therefore, the total offense level
24  will be reduced to 17 from 20 at 33 and 72.
25              And, last, I believe the arguments were made for
```

```
 1  downward departure and granting of the 5K1.1 motion.  And
 2  that's all argument, which I'll accept.
 3              Are there -- have I ruled on all of the
 4  objections now?
 5         MS. OLIVAREZ:  You have, Your Honor.
 6         THE COURT:  All right.  Then based on the presentence
 7  investigation report from the probation office and the addendum
 8  thereto, as modified by the rulings I've made and the
 9  objections, I find the total offense level is 17; the criminal
10  history category is I; the custody range recommended by the
11  advisory guidelines is from 24 to 30 months; fine range from
12  $5,000 to $50,000.  And there is a Section 5K1.1 motion the
13  government has filed.
14              Very well.  Do you wish to make a statement on
15  behalf of the defendant, Ms. Olivarez?
16         MS. OLIVAREZ:  Yes, Your Honor.  From the base offense
17  level 17, I understand that the 5K would give him the five
18  levels.
19         THE COURT:  That's what's the government is
20  recommending.
21         MS. OLIVAREZ:  Yes.  Okay.  What I -- the only thing
22  that I would argue, Judge, and I agree with you, is a
23  mitigating role.  I know that they didn't find him to -- they
24  didn't enhance him, but based on that my client -- the PSR
25  report finds him to be an average participant, and I would
```

1  argue to the Court that perhaps he was entitled to perhaps two
2  levels at least instead of the four because as to the
3  executives of PEMEX, there's already been evidence out there
4  that these people -- you know, legitimate business want to do
5  business with them and they direct them to these corrupted
6  officials.  And as compared to them from my client and
7  everybody else, I believe that my client was a minimal
8  participant or in the alternative a minor and he would be
9  warranted two levels.  I ask the Court to look at it again,
10 please.
11              *THE COURT:*  Well, I ruled on that already and I think
12 the ruling is proper.  This defendant received something on the
13 order of -- paid approximately -- derived from the theft of
14 this stolen product something on the order of three hundred --
15 more than three and a quarter -- $326,000 in profits from this
16 scheme.  That's the part he's being held accountable for and
17 that's what driving the guideline, the part that he has his
18 hands all over and money in his pockets.  And, so, I find that
19 it's inappropriate to have any kind of a reduced role
20 adjustment given the fact he's not being responsible -- held
21 responsible for all of the additional amounts that were stolen.
22              *MS. OLIVAREZ:*  Thank you, Your Honor.
23              *THE COURT:*  Anything else on behalf of the defendant?
24              *MS. OLIVAREZ:*  No, Your Honor.
25              *THE COURT:*  All right.  Thank you.

1              Mr. Maldonado, do you wish to make a statement in
2  your own behalf, sir?
3          *THE DEFENDANT:*  Yes, sir, Your Honor.  First, I would
4  like to apologize.  I take responsibility for my actions.  I
5  would like to apologize to my wife, my kids, my parents, my
6  in-laws, also, for my 14 employees and their families which
7  will be affected by my being in this, sir.  And, again, I take
8  responsibility, sorry for my actions.  Thank you.
9          *THE COURT:*  All right.  Thank you, sir.
10              Very well.  Mr. McAlister, do you wish to make a
11 statement for the government?
12         *MR. McALISTER:*  I do, Your Honor.  I would ask the
13 Court to consider the Government's 5K1.1 motion.  Specifically
14 I outlined very generally in Paragraph 4 the substantial
15 assistance that was provided by the defendant.
16         *THE COURT:*  Is that any different from the substantial
17 assistance being provided by the other defendants?  You made a
18 motion on all of the codefendants, I believe.
19         *MR. McALISTER:*  Your Honor, actually when the case was
20 instigated, the prosecution, we knew that the actual people
21 that took the product we would never be able to touch.  It was
22 a joint investigation between the U.S. and Mexico.
23         *THE COURT:*  Well, what I'm asking is --
24         *MR. McALISTER:*  Yes.
25         *THE COURT:*  -- Mr. Maldonado's assistance any

1  different from what you had -- is it just cumulative of what
2  you already had?
3      *MR. McALISTER:*  It's not, Your Honor.  The way the
4  scheme worked is that the -- on the Mexican side of the border,
5  the individuals actually conducted the theft.  And as defense
6  counsel pointed out, we do believe that the corporation itself
7  was involved in this with some corrupt corporate executives.
8  Then the product would move to the border, and there was
9  multiple fingers that would accept the product on this side of
10 the border.  One of those companies was Y Griega.  So, Y Griega
11 had different contacts on the Mexican side than, say,
12 Mr. Dappen's company had on the Mexican side.  And then as
13 those companies would accumulate it, they were in direct
14 contact with the people on the border.  It would funnel down
15 much more tightly and get to Continental Fuels and Trammo,
16 which were really kind of at the end of this scheme.  They had
17 more information about the money going back.  These individuals
18 had more information about the product coming across.
19     *THE COURT:*  All right.
20     *MR. McALISTER:*  So, without actually naming the
21 specifics, there was one individual who was specifically named
22 by Mr. Maldonado and he helped describe the scheme by which he
23 received it and the points of entry.  So, based on that, we're
24 asking for the five level decrease and the 5K1.1.  That
25 information also was sent back to Mexico.

1            *THE COURT:*  All right.  Thank you.
2            All right.  I'll state now the sentence the Court
3   intends to impose.  I'll give final opportunity for any legal
4   objections before it is -- other than those already made before
5   it is finally imposed.
6            The Court has considered the arguments for the
7   leniency and the 5K1.1 motion.  The Court will grant the motion
8   by the government and will make a downward adjustment of five
9   levels to offense level 12, Criminal History Category I, and
10  sentence within the range of the recommended guidelines of 10
11  to 16 months in custody.  The Court finds that a sentence
12  within that range and in accordance with that departure will
13  take into account the purposes and requirements of Section
14  3553(a).
15           Pursuant to the Sentencing Reform Act of 1984,
16  it's the judgment of the Court that the defendant Arnoldo
17  Maldonado is committed to the custody of the Bureau of Prisons
18  to be imprisoned for a term of six months.  This will be a
19  split term, six months confinement at the Bureau of Prisons and
20  six months on home detention.
21           Upon release from imprisonment, the defendant
22  should be placed on a term of supervised release for a term of
23  three years.
24           Within 72 hours after release from the custody of
25  the Bureau of Prisons, the defendant shall report in person to

1  the probation office in the district to which the defendant is
2  released.
3               While on -- the defendant will be restricted upon
4  release from prison to his place of residence continuously
5  except for absences authorized by the probation officer for a
6  period of six months beginning at -- or at a time determined by
7  the probation officer.  The probation officer may approve
8  absences for gainful employment, religious services, medical
9  care, education or training programs, and at other times as may
10 be specifically authorized by the probation officer.
11              The defendant shall participate in the home
12 detention program and be monitored by location monitoring by
13 the -- via the radio frequency system for a period of those six
14 months and shall abide by all technology requirements.  The
15 defendant shall pay for all or part of the cost of
16 participation in the location monitoring program as directed by
17 the Court and the probation officer.
18              Further, while on the term of supervised release,
19 the defendant shall not commit another federal, state, or local
20 crime; shall comply with the standard conditions that have been
21 adopted by this Court under General Order No. H 1996-10; abide
22 by any mandatory conditions acquired by law; and shall comply
23 with the following additional conditions:
24              The defendant shall not possess a firearm,
25 ammunition, destructive device, or any other dangerous weapon.

The defendant shall cooperate in the collection of a DNA sample from the defendant if the collections of such a sample is authorized pursuant to Section 3 of the DNA Analysis Backlog Elimination Act of 2000.

The defendant shall submit to periodic urine surveillance and/or breath, saliva, and skin tests for the detection of drug abuse as directed by the probation officer. The defendant will incur costs associated with such detection efforts based on ability to pay as determined by the probation officer.

Further, the defendant shall participate in a program, in patient or outpatient, for the treatment of drug and/or alcohol addiction, dependency, or abuse, which may include, but not be limited to, urine, breath, saliva, and skin testing to determine whether the defendant has reverted to the use of drugs and/or alcohol.

Further, the defendant shall participate as instructed and as deemed necessary by the probation officer and shall comply with all rules and regulations of the treatment agency until discharged by the program director with the approval of the probation officer.

The defendant shall further submit to such drug detection techniques in addition to those performed by the treatment agency as directed by the probation officer.

The defendant is required to provide the

```
 1  probation officer access to any requested financial
 2  information.  If a fine or restitution amount has been imposed,
 3  the defendant is prohibited from incurring new credit charges
 4  or opening additional lines of credit without approval of the
 5  probation officer.
 6              The defendant is prohibited from possessing a
 7  credit card or a credit access device, such as a credit card
 8  unless first authorized by the probation officer.
 9              It's further ordered that the defendant shall pay
10  to the United States a special assessment of $100.
11              It's further ordered that the defendant shall pay
12  to the United States a fine in the amount of $10,000.
13              Having assessed the defendant's ability to pay,
14  payment of the total criminal monetary penalties shall be due
15  as follows:  The defendant shall make a lump sum payment of
16  $100 due immediately.  The balance to be due in payments of $25
17  per quarter or 50 percent of any wages -- the greater of $25
18  per quarter or 50 percent of any wages earned while in prison
19  in accordance with the Bureau of Prisons Inmate Financial
20  Responsibility.  Any balance remaining after release from
21  imprisonment shall be paid in equal be monthly installments of
22  $300 a month to commence 30 days after the date of release to a
23  term of supervision.  Payments are to be made through the
24  United States District Clerk, Southern District of Texas.
25              Is there any legal reason other than those
```

1 already stated why the sentence should not be imposed as
2 stated?

3    *MR. McALISTER:*  No, Your Honor.

4    *MS. OLIVAREZ:*  No, Your Honor.

5    *THE COURT:*  Then pursuant to the Sentencing Reform Act
6 of 1984, it's the judgment of the Court that the sentence as
7 stated is imposed upon Defendant Arnoldo Maldonado.

8        Now, Mr. Maldonado, you have a right to appeal
9 this matter.  If you cannot afford a lawyer to represent you on
10 appeal and can satisfy the Court that you meet the criteria for
11 the appointment of counsel, I will appoint a lawyer for you.
12 I'm sure that Ms. Olivarez will advise you of your appeal
13 rights.  I'm also going to give to you this written notice of
14 your appeal rights that you may take with you and a copy of
15 this will be retained in the court file.

16        The defendant has been on terms of release up to
17 this point.

18    *MR. McALISTER:*  Your Honor, I would ask that he be
19 allowed to remain on terms of release until such time as a
20 reporting date can be determined.

21    *THE COURT:*  Voluntarily surrender?  You understand,
22 Mr. Maldonado, that if I permit you to voluntarily report, you
23 will be required to report to the prison where the Bureau of
24 Prisons orders you to appear?

25    *THE DEFENDANT:*  Yes, I do, Your Honor.

```
 1          THE COURT:  And on time, you understand?
 2          THE DEFENDANT:  Yes, I do, Your Honor.
 3          THE COURT:  All right.  And you are in the meanwhile
 4  required to comply with all of the other conditions that have
 5  existed with respect to your release.  Do you understand?
 6          THE DEFENDANT:  Yes, Your Honor.
 7          THE COURT:  All right.  I'll place that trust in you
 8  and permit you voluntarily to surrender.
 9          THE DEFENDANT:  Thank you.
10          MS. OLIVAREZ:  Thank you, Your Honor.
11          THE COURT:  Is there anything else?
12          MR. McALISTER:  Not from us, Your Honor.
13          MS. OLIVAREZ:  Not from us, Your Honor.  Thank you.
14          THE COURT:  All right.  That concludes this hearing.
15  Thank you.
16      (Concluded at 10:35 a.m.)
17                              * * *
18  I certify that the foregoing is a correct transcript from the
19  record of proceedings in the above-entitled cause, to the best
20  of my ability.
21
22  /s/ Kathy L. Metzger                      11-19-10
    Kathy L. Metzger                            Date
23  Official Court Reporter
24
25
```